[No. 8430.   Department One.   March 25, 1910.]

R. H. WELLS, *Appellant*, v. FERRY-BAKER LUMBER COMPANY, *Respondent.*[1]

MASTER AND SERVANT—SELECTION OF PHYSICIAN FOR EMPLOYEE—LIABILITY OF MASTER.  Where an employer withholds one dollar a month from the wages of employees and pays the same to a physician or surgeon selected by the employer to attend injured employees, he only owes the duty to use reasonable care in the selection of a competent surgeon, and is not liable for the negligence of the surgeon.

PHYSICIANS AND SURGEONS—NEGLIGENCE—REASONABLE CARE—USE of X RAY.  The evidence fails to show negligence of a physician in diagnosing a broken wrist as a sprain, where the fracture could only have been discovered by an X ray photograph, which is used only as a matter of extreme care, and many physicians practice without any X ray machine.

Appeal from a judgment of the superior court for Snohomish county, Black, J., entered March 24, 1909, upon granting a nonsuit at the close of plaintiff's case, dismissing an action in tort, after a trial before the court and a jury. Affirmed.

*Shepard & Flett*, for appellant.

*Brownell & Coleman* and *Cooley & Horan*, for respondent.

GOSE, J.—On October 21, 1907, the appellant, the plaintiff below, while engaged in the discharge of his duties as a day watchman at the defendant's mill, fell from the conveyor onto a platform, a distance of about ten feet, and sustained serious injuries. The complaint, after alleging formal matters, the employment, fall, and the injuries sustained, avers, in substance, that the defendant exacted and withheld from the wages of each of its employees, including the plaintiff, the sum of one dollar per month, which it paid to a physician and surgeon of its selection for such professional services as he

[1] Reported in 107 Pac. 869.

should render them; that, as a result of the fall, the bones of each forearm were broken; that the doctor selected by the respondent negligently treated the left arm for a sprain and, as a result of the negligent diagnosis and treatment, it is deformed and its usefulness greatly impaired. The complaint also alleges that the doctor was incompetent as a surgeon, and that this fact was known to the defendant. At the close of the plaintiff's testimony, a judgment of dismissal was entered. The plaintiff has appealed.

The first and principal question to be determined is whether, under the averments in the complaint and the testimony, there was any legal obligation resting upon the respondent other than to select a competent surgeon. While the incompetency of the surgeon selected by the respondent is alleged in the complaint, no testimony was offered to support it, and it will not receive further notice. The averment, when reduced to its simplest form, is that the sum of one dollar per month was withheld from the wages of the appellant and other employees and paid to a physician or surgeon selected by the respondent, and that the negligence of the surgeon caused the injury complained of.

We think, under the decisions of this court, that the implied duty of the respondent was to select a competent physician and surgeon, and that when it did so it had discharged its full legal obligation. It is not claimed that there was any express contract between the company and the appellant, and the complaint expressly excludes the inference that any profit resulted to the respondent. It was, therefore, a noncompensated or gratuitous trustee, and is liable only for a failure to use reasonable care in the selection of a competent surgeon. In treating a similar case, in *Richardson v. Carbon Hill Coal Co.*, 10 Wash. 648, 39 Pac. 95, this court said:

"This hospital was maintained and the physician provided for the sole purpose of relieving sick and injured employees without expense to them and without any intention on the part of the company of making any profit out of the undertaking. It was therefore a charitable institution and it was

supported by the contributions of employees, and carried on in their interests.    And if the company did employ the physician, as claimed by respondent, to look after and treat the sick and injured, it is not liable for his negligence, but is responsible only for want of ordinary care in selecting him."

The appellant, however, insists that this rule was not adhered to in *Sawdey v. Spokane Falls & N. R. Co.*, 30 Wash. 349, 70 Pac. 972, 94 Am. St. 880.    In the *Sawdey* case the court adverts to the fact that the surplus in excess of the cost of treating the employees was retained by the company, and said:    "There is therefore in this case both the element of contract and profit."    In commenting on the *Richardson* case, the court said that it was not authority for the broad proposition that an employer who maintains a hospital for a profit, or contracts for a consideration to treat its injured employees, is not liable for the negligence of the physician he employs notwithstanding he exercises reasonable care in the selection of a physician.    Torn from its setting, the word "consideration," as used by the court, might give color to the view that the rule in the *Richardson* case was modified, but the opinion as an entirety clearly shows that the word was used as synonymous with profit or anticipated profit.    In the case at bar, the language of the complaint expressly negatives even an anticipated profit.    The appellant cites *Phillips v. St. Louis & S. F. R. Co.*, 211 Mo. 419, 111 S. W. 109, 124 Am. St. 786, 17 L. R. A. (N. S.) 1167.    This case holds, upon somewhat similar facts, that the deduction of a portion of the wages of the employee and the employment of the physician makes the physician the agent of the company and renders it liable for his acts of negligence.    We think the rule announced by this court is the better and juster one, and it will be followed in this case.    This conclusion requires an affirmance of the judgment.    We will, however, consider the testimony which it is claimed makes a *prima facie* case of negligence on the part of the surgeon.

The learned trial court dismissed the case because in his

opinion there was no negligence shown. We concur in this view. Briefly stated, the evidence discloses that the surgeon at first expressed the opinion that both arms were broken, but said he would examine them with the X ray; that he did so, and then said that there was a fracture of the right wrist but that the left was sprained; that he so treated them; that the right wrist was restored to its normal condition; that upon complaint of the appellant from time to time that the left wrist was painful and not improving, he re-examined it with the X ray at least three times; that each examination confirmed his later opinion that it was sprained and not broken; that he said to the appellant, whenever he complained of the pain, that a sprain was "worse" than a break. The X ray examinations were what the physicians term fluoroscopic, which is made as the physician expressed it: "You use an X ray, but instead of taking a picture you have an apparatus that you hold in the hand and look through the arm." The only negligence claimed is that the defendant surgeon failed to take an X ray photograph so as to make certain his diagnosis.

A physician and surgeon by taking charge of a case impliedly represents that he possesses, and the law imposes upon him the duty of possessing, reasonable skill and learning. He is not liable for mistakes if he uses the method recognized and approved by those reasonably skilled in the profession. *Sawdey v. Spokane Falls & N. R. Co., supra.*

"He does not undertake to effect a cure, or restore a broken limb to its normal condition. If he treats the injury with a reasonable degree of skill and care, he is not responsible for the results." *Peterson v. Wells,* 41 Wash. 693, 84 Pac. 608. See, also, *Pike v. Honsinger,* 155 N. Y. 201, 49 N. E. 760, 63 Am. St. 655; *Jackson v. Burnham,* 20 Colo. 532, 39 Pac. 577; *Patten v. Wiggin,* 51 Me. 594, 81 Am. Dec. 593.

The conclusion is irresistible that the surgeon used reasonable diligence and skill, and that to permit a recovery would establish the rule that a surgeon is liable for a failure to use extraordinary care and diligence in both diagnosis and

treatment. The surgeon who testified that an X ray photograph should have been taken stated that he had practiced his profession for a period of twenty years and that he had never had an X ray machine. He examined the appellant for the first time about seventeen months after the injury, and took X ray photographs of the left wrist which he said showed a fracture which in his opinion a like investigation in the beginning would have revealed. Another surgeon said that the X ray was used only as a matter of extreme care. Viewing the testimony in the light most favorable to the appellant, it clearly shows that the attending surgeon used reasonable care, skill, and diligence in diagnosis and treatment. A verdict for the appellant could not be permitted to stand, and a judgment resting upon it would be set aside.

The judgment will be affirmed.

Rudkin, C. J., Chadwick, and Fullerton, JJ., concur.