## Shaheen v. Knight

*Hess, Casale & Wise,* for plaintiff.
*Williamson & Cupp,* for defendant.

WILLIAMS, P. J., March 15, 1957.—Plaintiff, Robert M. Shaheen, is suing defendant physician because of an operation. He alleges defendant contracted to make him sterile. According to the complaint, the operation occurred on September 16, 1954, and a "blessed event" occurred on February 11, 1956, when plaintiff's wife, Doris, was delivered of a fifth child as a result of marital relations continued after the operation.

Plaintiff in his complaint does not allege any negligence by defendant. The suit is based on contract.

Plaintiff does not claim that the operation was necessary because of his wife's health. He claims that in order to support his family in comfort and educate it, it is necessary to limit the size of his family, and that he would be emotionally unable to limit his family's size by reason or will power alone, or by abstention.

Plaintiff claims damages as follows: "That the Plaintiff, as a result, despite his love and affection for his fifth (5th) child, as he would have for any other child, now has the additional expenses of supporting,

educating and maintaining said child, and that such expense will continue until the maturity of said child, none of which expense would have been incurred, had the Defendant, Dr. John E. Knight, fulfilled the contract and undertaking entered into by him, or fulfilled the representations made by him."

Defendant has filed preliminary objections to the complaint, alleging:

"1. An alleged contract to sterilize a man whose wife may have a child without any hazard to her life is void as against public policy and public morals.

"2. Under Pennsylvania law there is no 'warranty of cure' by a physician.

"3. That the complaint charges no lack of skill, malpractice, or negligence in any respect in the performance of the operation, a vasectomy, but merely seeks to recover upon the ground that the operation did not achieve the purpose sought and the results allegedly promised.

"4. That while the complaint is said to be in assumpsit, it appears to be grounded on deceit, that is that the defendant made a statement, misrepresenting material facts, known to be false or made in ignorance or reckless disregard of its truth, with an intent to induce the plaintiff to act in reliance thereon, and the plaintiff, believing it to be true, did act thereon to his damage. If this be true the plaintiff has made no allegation of fraudulent intent on defendant's part, or any of the elements of deceit.

"5. The duty of a physician or surgeon to bring skill and care to the amelioration of the condition of his patient does not arise from contract but has its foundation in public considerations which are inseparable from the nature and exercise of his calling; it is predicated by the law on the relation which exists between physician and patient, which is the result of a consensual transaction.

·"6. That the plaintiff has suffered no damage but 'has been blessed with the fatherhood of another child.'"

We are of the opinion that a contract to sterilize a man is not void as against public policy and public morals. It was so held in Christensen v. Thornby, 192 Minn. 123, 255 N.W. 620. Also see 93 A.L.R. 570. It is argued, however, that in the Christensen case the operation was for a man whose wife could not have a child without hazard to her life, whereas in the instant case claimant has contracted for sterilization because he cannot afford children.

It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in declaring such policy void: Mamlin v. Genoe, 340 Pa. 320. It has been said: "There must be a positive, well-defined, universal public sentiment, deeply integrated in the customs and beliefs of the people and in their conviction of what is just and right and in the interests of the public weal."

It is the faith of some that sterilization is morally wrong whether to keep wife from having children or for any other reason. Many people have no moral compunctions against sterilization. Others are against sterilization, except when a man's life is in danger, when a person is low mentally, when a person is an habitual criminal. There is no virtual unanimity of opinion regarding sterilization. The Superior Court, in Wilson v. Wilson, 126 Pa. Superior Ct. 423, ruled that the incapacity to procreate is not an independent ground for divorce where it appears that the party complained against is capable of natural and complete copulation. This case so held whether or not there was natural or artificial creation of sterility, and recognized that in some cases there was artificial creation

of sterility. It would appear that an exception would have been made had there been recognized any public policy against sterilization.

Defendant argues that there is no "warranty of cure" by physician in Pennsylvania. He also argues that the duty of a physician or surgeon does not arise from contract and suggests that it is against public policy for such a contract to be upheld.

It is true that there is no implied "warranty of cure" in Pennsylvania: McCandless v. McWha, 22 Pa. 261. An action against a physician for malpractice can only be sustained by proof of his negligence: Nixon v. Pfahler, 279 Pa. 377. The surgeon's duty and obligation is to employ only such reasonable skill and diligence as is ordinarily exercised in the profession.

A doctor and his patient, however, are at liberty to contract for a particular result. If that result be not attained, the patient has a cause of action for breach of contract. The cause of action is entirely separate from malpractice, even though both may arise out of the same transaction. The two causes of action are dissimilar as to theory, proof and damages recoverable. Negligence is the basis of malpractice, while the action in contract is based upon a failure to perform a special agreement: Colvin v. Smith, 92 N. Y. S. 2d 794; Budorf v. Kessler, 135 N. Y. S. 2d 696; Manning v. 1234 Corporation, 19 N. Y. S. 2d 323; Lewis v. Dunbar and Sullivan Dredging Co. 36 N. Y. S. 2d 897. Damages in a contract action between doctor and patient are restricted in some jurisdictions.

In the instant case plaintiff is suing, according to his claim, under a special contract in which defendant agreed to make him "immediately and permanently sterile and guaranteed the results thereof." Defendant's "warranty of cure" argument therefore does not apply to this case.

We see little merit in defendant's argument that the action seems to be grounded on deceit and that therefore we should dismiss the complaint.

Defendant argues, however, and pleads, that plaintiff has suffered no damage. We agree with defendant. The only damages asked are the expenses of rearing and educating the unwanted child. We are of the opinion that to allow damages for the normal birth of a normal child is foreign to the universal public sentiment of the people.

Many consider the sole purpose of marriage a union for having children.

As Chief Justice Gibson said in Matchin v. Matchin, 6 Pa. 332: "The great end of matrimony is not the comfort and convenience of the immediate parties, though these are necessarily embarked in it; but the procreation of a progeny having a legal title to maintenance by the father; and the reciprocal taking for better, for worse, for richer, for poorer, in sickness and in health, to love and cherish till death, are important, but only modal conditions of the contract, and no more than ancillary to the principal purpose of it. The civil rights created by them may be forfeited by the misconduct of either party; but though the forfeiture can be incurred, so far as the parties themselves are concerned, only by a responsible agent, it follows not that those rights must not give way without it to public policy, and the paramount purposes of the marriage—the procreation and protection of legitimate children, the institution of families, and the creation of natural relations among mankind; from which proceed all the civilization, virtue, and happiness to be found in the world."

To allow damages in a suit such as this would mean that the physician would have to pay for the fun, joy and affection which plaintiff Shaheen will have in the

rearing and educating of this, defendant's fifth child. Many people would be willing to support this child were they given the right of custody and adoption, but according to plaintiff's statement, plaintiff does not want such. He wants to have the child and wants the doctor to support it. In our opinion to allow such damages would be against public policy.

### Order

And now, March 15, 1957, it is ordered and decreed that plaintiff's action be dismissed, costs on plaintiff.