[No. 36844.   Department Two.   April 16, 1964.]

LYNTON L. BALL *et al., Appellants,* v. CARL E. MUDGE *et al.,
Respondents.**

*Vaughn E. Evans,* for appellants.

*Rosling, Williams, Lanza & Kastner,* by *Joseph J. Lanza,*
for respondents.

DENNEY, J.†—In this action, plaintiffs Lynton L. Ball and
Florence R. Ball, his wife, sought recovery of damages
against Carl E. Mudge and wife, Bryce E. McMurry and
wife, and Bernard J. Goiney and wife for alleged breach of
warranty and negligence by defendant Carl E. Mudge in
failing to successfully sterilize Mr. Ball in a vasectomy per-
formed by Dr. Mudge. Verdict of a jury was for defendants
and judgment was entered thereon. Plaintiffs, Ball, appeal.

Respondents are partners in the practice of medicine un-
der the name of "Doctors' Clinic of Lake City." Dr. Mudge

*Reported in 391 P. (2d) 201.

†Judge Denney is serving as a judge pro tempore of the Supreme
Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

is the only respondent who took part in the treatment, so he will be referred to as though he were the only respondent.

Appellants first consulted Dr. Mudge on August 29, 1957, relative to the performance of an operation on Mr. Ball which would protect Mrs. Ball from a fourth pregnancy. Three children had been born to the appellants in as many years. All had been delivered by Caesarean section. Appellants were led to seek the services of respondent because of the expense incident to the birth and rearing of three children, and a suggestion by the obstetrician who delivered the last child that further deliveries by Caesarean section would be inadvisable. Dr. Mudge believed these to be valid reasons for performance of a vasectomy, a surgical procedure by which a section of the vas deferens, a tube which carries spermatozoa, is cut, and the severed ends sutured, thus preventing escape of sperm to a point where the male may impregnate the female. The appellants testified that Dr. Mudge told them that his method of cutting and suturing, rather than simply tying the cord, would insure sterility. Dr. Mudge denied that he made such a statement.

The vasectomy was performed on November 1, 1957. Respondent did not advise nor make a post-operative test of semen to determine if Mr. Ball was producing sperm. Respondent told him that he could resume sexual relations with his wife after healing of an infection which occurred at the site of the operation. Mr. Ball resumed relations with his wife 4 to 6 weeks after the operation and continued thereafter without use of contraceptives. Mrs. Ball became pregnant in November, 1958, and was delivered of a normal, healthy daughter on August 10, 1959, by another Caesarean section, without any extraordinary or permanent adverse effect on Mrs. Ball's health.

Appellants asked for damages for expenses of delivery of the fourth child, care, maintenance and support of said child, pain, suffering and mental anguish of parents and loss of the services, society, companionship and consortium of the wife.

Respondent invites us to determine that the case should not have been allowed to go to the jury because the birth of a normal child without extraordinary pain, suffering or

abnormal discomfort to the mother during pregnancy, delivery and recuperation, cannot be damage compensable in law. Two cases are cited by respondent which so hold in actions based on breach of contract and deceit. *Christensen v. Thornby,* 192 Minn. 123, 255 N. W. 620, 93 A.L.R. 570; *Shaheen v. Knight,* 11 Pa. D. & C. (2d) 41.[1] We decline this invitation because of our conclusion that the verdict for respondents must be sustained. Proceeding to a consideration of appellants' assignments of error should not be construed as an expression of opinion by this court on respondent's contention that the case should, or should not, have been resolved in his favor as a matter of law.

Additional facts will be noticed in considering appellants' assignments of error, the first of which is that the trial court erred in refusing to direct a verdict for appellants on the issue of liability. No error was committed in this regard for several reasons.

(1) The contention that the standard of practice in Seattle made post-operative testing mandatory was in dispute. Respondent testified "Some doctors do and some don't." Dr. Jack N. Nelson, a genito-urinary surgeon with extensive experience in the performance of vasectomies, testified that he knew of no standard of practice in the community in that regard. The absence of an accepted standard of practice is due partially to the fact that the operation is usually performed in the physician's office rather than a hospital.

(2) The jury was justified in finding that any negligence or breach of warranty by Dr. Mudge was not a proximate cause of Mr. Ball's fertility in November, 1958, 1 year after the surgical procedure. All of the medical witnesses testified that a process known as recanilization, while rare, sometimes occurs after the operation and such cannot be prevented by the surgeon. Dr. Nelson testified that the history of frequent pregnancies showed Mr. Ball had a high degree of fertility before the operation, and that the sperm count disclosed by tests 1½ years, and 4½ years after the operation "fits well into the picture of recanilization."

---

[1] Independent research has disclosed no other cases.

(3) As reasonable persons, the jury may well have concluded that appellants suffered no damage in the birth of a normal, healthy child, whom they dearly love, would not consider placing for adoption, and "would not sell for $50,000," and that the cost incidental to such birth was far outweighed by the blessing of a cherished child, albeit an unwanted child at the time of conception and birth.

(4) The claim that fraud and deceit were proven by undisputed evidence is without merit. Appellants' complaint did not sound in fraud or deceit, but in negligence and breach of warranty. Assuming, however, that the complaint should be regarded as amended to conform to the proof, the trial produced insufficient evidence to warrant submission of the issue of fraud or deceit to the jury. There was no proof that Dr. Mudge made any statement to appellants of an existing fact which was to Dr. Mudge's knowledge either actually or constructively false. No inference can be drawn from the fact that Mr. Ball was fertile in November, 1958, that Dr. Mudge knew him to be so a year previous, or that Dr. Mudge's advice to resume intercourse 4 weeks after the operation was a statement made recklessly without knowing its truth or falsity. There is a complete absence of evidence indicating bad faith or deceit. It, at most, indicated negligence or breach of warranty, both of which were submitted to the jury.

■ Requests for instructions on the doctrine of res ipsa loquitur were refused. Assuming, arguendo, that the doctrine has any application to this case, no instructions need be given on the subject. The rule is clearly stated in *Chase v. Beard,* 55 Wn. (2d) 58, 65, 346 P. (2d) 315:

"Error is assigned on refusal of the court to instruct on what is called the 'doctrine' of *res ipsa loquitur.* We find no error in this respect. The 'doctrine' is a misnomer for it is a mere rule of evidence (*Morner v. Union Pac. R. Co.,* 31 Wn. (2d) 282, 196 P. (2d) 744; *Penson v. Inland Empire Paper Co.,* 73 Wash. 338, 132 Pac. 39), and is not a rule of substantive law. *Pacific Coast R. Co. v. American Mail Line, Ltd.,* 25 Wn. (2d) 809, 172 P. (2d) 226. . . .
"  . . .
"In cases in which the so-called 'doctrine' is applicable, its

primary purpose is to withstand the challenge of the defendant's motion for a nonsuit. It did so here. There was no necessity for any instruction. . . ."

Appellants' requested instructions, relative to the duty of a physician to collect data and make tests essential to a sound diagnosis, have no application to this case. No diagnosis was needed to determine the proper surgical procedure requested by appellants.

Appellants further contend that the jury should have been told that it could consider whether or not the negligence of Dr. Mudge was so grossly apparent that it need not rely on the testimony of expert witnesses. Negligence on the part of the physician must be established by showing a departure from the recognized standard of practice by medical testimony unless such negligence is so grossly apparent that a layman would have no difficulty in recognizing it. *Richison v. Nunn,* 57 Wn. (2d) 1, 340 P. (2d) 793. The required skill in the performance of a successful vasectomy and the necessity for post-operative tests do not lie within the common knowledge of laymen.

Appellants' requested instructions on the duty of a physician to refrain from prematurely terminating treatment had nothing to do with the case. Dr. Mudge admits he made no post-operative tests and advised Mr. Ball that he could resume normal sexual relations with his wife. The issue for the jury was whether or not this was short of the standard of care required by a physician in the community and whether or not it was a proximate cause of Mr. Ball's subsequent fertility.

Other assignments of error dealing with the trial court's instructions and with his refusal to give requested instructions have been studied. It is enough to say that the trial court was confronted with a plethora of requested instructions. Some were proper, some redundant, some argumentative, some slanted, and some irrelevant to any issue supported by substantial evidence. He chose to prepare his own instructions which would completely and succinctly

cover all issues in a fair and unbiased manner. He succeeded admirably.

Appellants had a fair trial.

Judgment affirmed.

OTT, C. J., DONWORTH. FINLEY, and WEAVER, JJ., concur.

June 12, 1964. Petition for rehearing denied.