405 So.2d 1022 (1981)
Daniel L. MOORES and Linda G. Moores, Individually and As Parents and Natural Guardians of Justin Daniel Moores, Appellants,
v.
Charles S. LUCAS, M.D.; Carl J. Brunoehler, M.D.; Raymond Bernstein, M.D.; Charles R. Frans, M.D.; Brunoehler, Franz, Lucas & Bernstein, M.D., P.A.; and Florida Physicians Insurance Reciprocal, Appellees.
Nos. 80-1360, 81-117.
District Court of Appeal of Florida, Fifth District.
October 28, 1981.
Rehearing Denied November 23, 1981.
*1023 Anne C. Conway of Wells, Gattis, Hollowes, Holbrook & Conway, Orlando, for appellants.
William B. Wilson, of Maguire, Voorhis & Wells, P.A., Orlando, for appellees.
COBB, Judge.
This case raises questions concerning Florida's recognition of causes of action for wrongful life and wrongful birth, and appropriate damages for such actions.
*1024 Appellants/plaintiffs Daniel and Linda Moores, as parents and natural guardians of Justin Daniel Moores, filed suit against various defendant physicians specializing in obstetrics and gynecology, their professional association, and their insurance carrier. Their complaint alleged that Linda suffers from a genetic malady known as "Larsen's Syndrome," which has caused her physical problems, mental suffering, and substantial expenses for medical care since birth. Linda and Daniel decided to have a child and sought the medical advice of the defendants as to whether or not Linda's condition was inheritable. If they had been advised that the condition was inheritable, they would have avoided having a child. The complaint further alleged that the defendants had negligently failed to advise the plaintiffs that the condition was inheritable, and consequently Justin was conceived and he was born with Larsen's Syndrome.
The damages which Daniel and Linda Moores sought to recover are: (1) past and future medical expenses for the extraordinary care involved in the treatment of Justin Daniel Moores' physical abnormalities related to Larsen's Syndrome; (2) past and future emotional pain and suffering of the plaintiffs resulting from the birth of their afflicted son; (3) physical pain and suffering and mental anguish of Linda Moores caused by becoming pregnant, carrying to term, and giving birth to her son; and (4) costs of bringing the action.
The appellees/defendants moved to dismiss or strike the claim of Justin Daniel Moores for wrongful life on the ground that such a cause of action was not recognized in Florida. The trial court granted the motion and dismissed the claim for wrongful life with prejudice. Additionally, the defendants moved to dismiss the claim of the parents for wrongful birth or alternatively to strike the damages sought on that claim. The defendants argued that the allegations of the complaint showed that Linda Moores wanted to become pregnant and bear a child; that the pregnancy and delivery in connection with Justin were no more painful or difficult than if he had been normal; that costs of bringing an action are not a recognizable basis for stating a claim; and that there was no basis for the claim to damages for pain, suffering, and mental anguish due to Florida's "impact doctrine." The trial court granted the motion and both dismissed the claim of the parents for wrongful birth and struck the various claims for damages. The case is before this court on the consolidated appeals of those two orders.

I. THE CLAIM OF THE CHILD
The wrongful life cases that have been brought on behalf of children have fallen into three major categories: (1) actions brought by illegitimates; (2) actions brought by unwanted children who were born as the result of a failed sterilization or abortion; and (3) actions brought by a child was was born deformed as a result of a failure to diagnose and/or inform his parents of an inheritable disease.
There is no cause of action for wrongful life by illegitimates: Pinkney v. Pinkney, 198 So.2d 52 (Fla. 1st DCA 1967), overruled on other grounds, Brown v. Brown, 300 So.2d 668 (Fla. 1974); Stills v. Gratton, 55 Cal. App.3d 698, 127 Cal. Rptr. 652 (1976); Zepeda v. Zepeda, 41 Ill. App.2d 240, 190 N.E.2d 849 (1963), cert. denied, 379 U.S. 945, 85 S.Ct. 444, 13 L.Ed.2d 545 (1964); Williams v. State, 18 N.Y.2d 481, 276 N.Y.S.2d 885, 223 N.E.2d 343 (1966); Slawek v. Stroh, 62 Wis.2d 295, 215 N.W.2d 9 (1974).
It has also been held that there is no cause of action for wrongful life by an unwanted healthy child born as the result of a failed sterilization or abortion: Coleman v. Garrison, 349 A.2d 8 (Del. 1975); Sala v. Tomlinson, 73 App.Div.2d 724, 422 N.Y.S.2d 506 (1979); Clegg v. Chase, 89 Misc.2d 510, 391 N.Y.S.2d 966 (1977). Nor is there a cause of action for wrongful life by an unwanted deformed child born as the result of a failed sterilization or abortion: LaPoint v. Shirley, 409 F. Supp. 118 (W.D. Tex. 1976); Elliott v. Brown, 361 So.2d 546 (Ala. 1978); Stribling v. DeQuevedo, ___ Pa. Super. ___, 432 A.2d 239 (1980).
*1025 The following cases have held there is no cause of action for wrongful life by a deformed child born as the result of the failure to diagnose and/or inform his parents regarding an inheritable disease: Gildiner v. Thomas Jefferson University Hospital, 451 F. Supp. 692 (E.D.Pa. 1978); Smith v. United States, 392 F. Supp. 654 (N.D.Ohio 1975); Berman v. Allen, 80 N.J. 421, 404 A.2d 8 (1979); Gleitman v. Cosgrove, 49 N.J. 22, 227 A.2d 689, 22 A.L.R.3d 1411 (1967), overruled on other grounds, Berman v. Allen, 80 N.J. 421, 404 A.2d 8 (1979); Becker v. Schwartz/Park v. Chessin, 46 N.Y.2d 401, 413 N.Y.S.2d 895, 386 N.E.2d 807 (1978); Karlsons v. Guerinot, 57 App. Div.2d 73, 394 N.Y.S.2d 933 (1977); Speck v. Finegold, 268 Pa.Super. 342, 408 A.2d 496 (1979); Stewart v. Long Island College Hospital, 35 App.Div.2d 531, 313 N.Y.S.2d 502 (1970), affirmed, 30 N.Y.2d 695, 332 N.Y.S.2d 640, 283 N.E.2d 616 (1972); Speck v. Finegold, 268 Pa.Super. 342, 408 A.2d 496 (1979); Dumer v. St. Michael's Hospital, 69 Wis.2d 766, 233 N.W.2d 372, 83 A.L.R.3d 1 (1975). Only one case has been cited to us by appellants which lends support to the novel theory underlying an action for wrongful life by a deformed child born as the result of the failure to diagnose and/or warn his parents of an inheritable disease: Curlender v. Bio-Science Laboratories, 106 Cal. App.3d 811, 165 Cal. Rptr. 477 (1980).
We are invited by the appellants, in support of such an action, to pass beyond the horizon of the known world of law, however imperfect it may be, into a labyrinth of imponderabilities. We concur with the analysis of the Pennsylvania court in Speck v. Finegold, which wrote:
In the instant case, we deny Francine's claim to be made whole. When we examine Francine's claim, we find regardless of whether her claim is based on "wrongful life" or otherwise, there is a failure to state a legally cognizable cause of action even though, admittedly, the defendants' actions of negligence were the proximate cause of her defective birth. Her claims to be whole have two fatal weaknesses. First, there is no precedent in appellate judicial pronouncements that holds a child has a fundamental right to be born as a whole, functional human being. Whether it is better to have never been born at all rather than to have been born with serious mental defects is a mystery more properly left to the philosophers and theologians, a mystery which would lead us into the field of metaphysics, beyond the realm of our understanding or ability to solve. The law cannot assert a knowledge which can resolve this inscrutable and enigmatic issue. Second, it is not a matter of taking into consideration the various and convoluted degrees of the imperfection of life. It is rather the improbability of placing the child in a position she would have occupied if the defendants had not been negligent when to do so would make her nonexistent. The remedy afforded an injured party in negligence is intended to place the injured party in the position he would have occupied but for the negligence of the defendant. Thus, a cause of action brought on behalf of an infant seeking recovery for a "wrongful life" on grounds she should not have been born demands a calculation of damages dependent on a comparison between Hobson's choice of life in an impaired state and non-existence. This the law is incapable of doing.
Finally, we hold that the impossibility of this suit as to Francine comes not so much from the difficulty in measuring the alleged damages as from the fact, unfortunately, that this is not an action cognizable in law. Thus, the recognized principle, not peculiar to traditional tort law alone, that it would be a denial of justice to deny all relief where a wrong is of such a nature as to preclude certain ascertained damages, is inapposite and inapplicable here. Accordingly, plaintiffs' complaint insofar as Francine's claim for damages for "wrongful life" is concerned, does not present a legally cognizable action at law.
408 A.2d at 508.
We, therefore, affirm the trial court's action in dismissing with prejudice the claim by Justin Moores for "wrongful life."

*1026 II. THE CLAIM OF THE PARENTS
The cases dealing with wrongful birth fall into two major categories: (1) those cases arising from a failed sterilization or abortion; and (2) those cases arising from the failure to diagnose and/or warn of an inheritable disease.
Florida's courts have recognized a cause of action arising from a failed sterilization or abortion. Public Health Trust v. Brown, 388 So.2d 1084 (Fla.3d DCA 1980); The Ladies' Center of Clearwater, Inc. v. Reno, 341 So.2d 543 (Fla. 2d DCA 1977); Aronoff v. Snider, 292 So.2d 418 (Fla. 2d DCA 1974); Jackson v. Anderson, 230 So.2d 503 (Fla. 2d DCA 1970). There is no Florida decision addressing the issue of whether or not this state recognizes a claim for wrongful birth in a case arising from the failure to diagnose and/or warn of an inheritable disease.
We hold that there is a cause of action for the failure of a physician to diagnose and/or warn of an inheritable disease which results in the birth of a deformed child. Accord, Berman v. Allen, 80 N.J. 421, 404 A.2d 8 (1979); Becker v. Schwartz/Park v. Chessin, 413 N.Y.S.2d 895, 386 N.E.2d 807 (1978); Jacobs v. Theimer, 519 S.W.2d 846 (Tex. 1975); Dumer v. St. Michael's Hospital, 69 Wis.2d 766, 233 N.W.2d 372 (1975).
On the issue of damages, we agree with the defendants that the claim for physical pain and suffering and mental anguish of Linda Moores arising from her pregnancy and giving birth was properly stricken, since Linda Moores wanted to become pregnant and bear a child, and the pregnancy and delivery in connection with Justin were no more difficult or painful than if he had been normal. The claim for past and future emotional pain and suffering resulting from the birth of Justin were properly stricken on the basis of the impact doctrine. Gilliam v. Stewart, 291 So.2d 593 (Fla. 1974); Herlong Aviation, Inc. v. Johnson, 291 So.2d 603 (Fla. 1974); Pazo v. Upjohn Co., 310 So.2d 30 (Fla. 2d DCA 1975). The claim for costs was properly stricken, since there was no statute or contract allowing for the recovery of costs. See 12 Fla.Jur.2d Costs § 3 (1979), and cases cited therein.
On the other hand, we agree with the plaintiffs that the trial court erred in striking their claim for past and future medical expenses for the extraordinary care involved in the treatment of Justin Daniel Moores' physical abnormalities related to Larsen's Syndrome. In Jacobs v. Theimer, 519 S.W.2d 846 (Tex. 1975), an action was brought against a physician who failed to diagnose rubella during pregnancy, resulting in defects in the major organs of the child. The parents claimed they would have terminated the pregnancy had the doctor informed them of the rubella. The damages sought were medical expenses for treatment and care of the child and for the emotional suffering of the parents. The Texas Supreme Court, reversing the trial court, held that a cause of action was pleaded. After assuming that the mother would have legally terminated the pregnancy as she claimed, the Texas court reviewed cases in other states and observed the difficulties inherent in awarding damages "based upon speculation as to the quality of life and as to the pluses and minuses of parental mind and emotion." After denying the recovery of emotional damages by the parents, the court then stated:
The economic burden related solely to the physical defects of the child is a different matter which is free from the above objection. These expenses lie within the methods of proof by which the courts are accustomed to determine awards in personal injury cases. No public policy obstacle should be interposed to that recovery. It is impossible for us to justify a policy which at once deprives the parents of information by which they could elect to terminate the pregnancy likely to produce a child with a defective body, a policy which in effect requires that the deficient embryo be carried to full gestation until the deficient child is born, and which policy then denies recovery from the tortfeasor of costs of treating and caring for the defects of the child.
In conclusion, the Texas court held:

*1027 The plaintiffs George and Dortha Jacobs have stated a cause of action against Dr. Theimer. The suit for recovery of expenses reasonably necessary for the care and treatment of their child's physical impairment, due to Mrs. Jacobs having contracted rubella, is not barred by considerations of public policy. This will be the limit of recovery allowable to plaintiffs... .
In a similar case arising in Wisconsin, Dumer v. St. Michael's Hospital, 233 N.W.2d 372 (Wis. 1975), it was held that the parents of such a child, born with defects caused by rubella during pregnancy which was not diagnosed by the treating physician, were entitled to claim damages sustained because of the deformity and defects of the child. The Wisconsin court stated:
Their damages must be limited to those expenses which they have reasonably and necessarily suffered, and will to a reasonable medical certainty suffer in the future by reason of the additional medical, hospital and supportive expenses occasioned by the deformities of the child as contrasted to a normal, healthy child.
We concur with the reasoning and the results of the Texas and Wisconsin Supreme Courts in Jacobs and Dumer. In the instant case, Daniel and Linda Moores have pleaded a cause of action for the recovery of medical expenses for the extraordinary care involved in the treatment of Justin Daniel Moores' physical abnormalities related to Larsen's Syndrome, which is in excess of the cost of raising a normal child. Accordingly, we reversed the dismissal with prejudice of their complaint and reverse the striking by the trial court of that element of claimed damage; the striking of the other elements of claimed damage is affirmed.
AFFIRMED in part; REVERSED in part; and REMANDED.
FRANK D. UPCHURCH, Jr. and SHARP, JJ., concur.